IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 91-CR-0050-004-CVE |
| | ) | |
| RANDY GLOVER, | ) | USM Number: 06799-062 |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is the motion of defendant for reduction of sentence pursuant to 18 U.S.C. § 3582(c) (Dkt. # 443). Defendant cites Amendment 484 as his basis for reduction of sentence. Defendant argues that, subsequent to his sentencing, the United States Sentencing Commission revised the commentary to USSG § 2D1.1 regarding the meaning of the term "mixture or substance," expressly providing that this term does not include portions of a drug mixture that must be separated before the substance can be used. Defendant contends that consideration of this new definition will result in a reduction of his calculated guideline range.

BACKGROUND

In April 1992, defendant was convicted by a jury of conspiracy to manufacture, possess, and distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(a)(viii). In May 1992, defendant was sentenced to the custody of the Bureau of Prisons for a term of 292 months, followed by a five-year term of supervised release. In reaching this sentence, the court found defendant subject to a total offense level 38 and a criminal history category III, for a sentencing range of 292 to 365 months. The court determined the guideline range under USSG § 2D1.1, using of the <u>Guidelines</u> <u>Manual</u> effective on November 1, 1991. The court found defendant responsible

for 58.5 kilograms of methamphetamine, leading to a base offense level 38 under § 2D1.1(c)(3), two levels were added under § 2D1.1(b)(1) for possession of a dangerous weapon, and a two-level decrease for acceptance of responsibility was granted, for a total offense level 38. Drug quantities were calculated as follows (see PSR, ¶ 28a. - h.):

| | | |
|---|---|---|
| a. | In November 1989 defendant engaged in the negotiation to manufacture 100 pounds of methamphetamine. | 45.36 KG |
| b. | Defendant attempted to cook 5 pounds of methamphetamine during four cooks from July 1988 to October 1988. | 2.27 KG |
| c. | Five (5) pounds of methamphetamine were "powdered out" in Haskell, Oklahoma, in September 1988. | 2.27 KG |
| d. | Eighteen (18) gallons of methamphetamine oil, which would have produced 18 pounds of methamphetamine, was seized on July 15, 1989. | 8.16 KG |
| | Also seized was a 1 pound quantity of methamphetamine. | .45 KG |
| e. | Defendant assisted in the distribution of 1 ounce of methamphetamine in Glenpool, Oklahoma, in August 1988. | .028 KG |
| f. | Defendant assaulted an individual in April 1988, attempting to collect a debt on the sale of 1/8 ounce of methamphetamine. | .004 KG |
| g. | Defendant was present on four occasions during the summer of 1987 and 1988 during the sale of 1/8 ounce of methamphetamine. | .014 KG |
| h. | In June 1988 defendant delivered 1 ounce of methamphetamine to Todd Hignite. | .028 KG |
| | TOTAL | 58.5 KG |

The sentencing court found that, since the conspiracy involved 58.5 kilograms[1] of methamphetamine, the base offense level was 38 because the quantity of methamphetamine was at least 30 but less than 100 kilograms. USSG § 2D1.1(c)(3).

Defendant argues that Amendment 484 revised § 2D1.1 to limit the definition of "mixture or substance" to a market-oriented approach, specifically omitting from consideration any waste or byproduct produced during the manufacture of a controlled substance. Defendant argues that the 18 gallons of methamphetamine oil seized on July 15, 1989, and described above in PSR ¶ 28d. as capable of producing 18 pounds of methamphetamine, is contrary to the amended definition of a mixture or substance. Defendant contends the total weight of controlled substance attributable to him for guideline purposes is 50.34[2] kilograms, because the weight of the methamphetamine oil (8.16 kilograms), should be reduced from the total court-determined weight of 58.5 kilograms. Defendant argues that this remaining market ready quantity, 50.34 kilograms, has been mixed with cutting agents, or diluted for street sales. He contends a dilution ratio of 12 percent is reasonable, leaving 12 kilograms of a mixture containing methamphetamine. Defendant argues further that, based on trial testimony, the methamphetamine mixture produced by the conspiracy was 12 percent pure, and the 12 kilograms should be further multiplied by 12 percent to arrive at 1.44 kilograms of pure methamphetamine. Defendant contends that 1.44 kilograms of pure methamphetamine provides for a base offense level 32, with a two-level reduction for acceptance, resulting in a total

---

[1] The individual drug transactions cited in the presentence report and total drug quantity attributable to defendant, 58.5 kilograms, was upheld in United States v. Glover, No. 92-5130, 1993 WL 53575 (10th Cir. Feb. 16, 1993) (unpublished) (Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.)

[2] Defendant erroneously calculates the weight as 50.45 kilograms. (See Dkt. # 443, p. 6).

offense level of 30. According to defendant, offense level 30 and criminal history category III provide for an Amendment 484-revised guideline range of 121 to 151 months (see Dkt. # 443, p. 8). Defendant moves for reduction of sentence accordingly.

## DISCUSSION

Amendment 484 is retroactive. See USSG § 1B1.10(c). The amendment provides that a "mixture or substance" does not include materials that must be separated from the controlled substance before the drug can be used. Examples include waste water from an illicit laboratory used to manufacture a controlled substance. See Guidelines Manual, Appendix C - Volume I, pp. 379-80. Methamphetamine production involves a three-step process: (1) production of phenylacetone; (2) conversion of phenylacetone to methamphetamine oil; and, (3) conversion of the oil to a water soluble salt. It is clear that methamphetamine oil requires further processing to reach a marketable substance. Conversion of 18 pounds of methamphetamine oil to 18 pounds of methamphetamine does conflict with Amendment 484. See United States v. French, 200 Fed. App'x 774, 783-84 (10th Cir. 2006) (unpublished)[3] (finding district court erred in attributing to defendant entire weight of waste water and other liquid byproducts of methamphetamine manufacture); United States v. Tannehill, No. 97-2186, 1997 WL 741163, at *1 (10th Cir. Nov. 28, 1997) (unpublished)[4] (stating it is improper to consider weight of methamphetamine oil as the oil in the mixture must be removed before the methamphetamine can be used). The commentary to § 2D1.1 permits any reasonable method to approximate the weight of the mixture or substance to be counted. However, for this

---

[3]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[4]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

analysis the Court will adopt defendant's suggestion that the total weight of methamphetamine attributable to him, 58.5 kilograms, should be reduced by the weight of the oil, resulting in a total methamphetamine weight of 50.34 kilograms, thereby giving defendant full credit toward application of Amendment 484. Therefore, the Court will evaluate defendant's motion for reduction of sentence based on 50.34 kilograms of a mixture containing methamphetamine, a quantity urged by defendant.

Defendant next argues that this 50.34 kilogram mixture of methamphetamine should be reduced based on the presence of cutting agents, and further decreased due to impurity of the substance. It is here that defendant's argument falters. The Court need not evaluate defendant's claims as to the percentage of additives or the purity of the substance. Once the quantity of controlled substance is determined to be in a form that does not require further separation to be used, then the Court is to consider the full weight of the substance in determining the base offense level. The full text definition of the term "mixture or substance" is set out in § 2D1.1, comment (n. 1): "'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before can be used . . ." The term "mixture or substance" as it applies to § 841 was settled in <u>Chapman v. United States</u>, 500 U.S. 453 (1991). <u>Chapman</u> found that Congress adopted a "'market-oriented' approach to punishing drug trafficking." <u>Id</u>. at 461. The <u>Chapman</u> Court noted that with respect to methamphetamine and PCP, Congress drafted § 841 to penalize drug offenders based not only on the weight of the "pure" drug, but also on the weight of the "mixture or substance containing a detectable amount of a [controlled substance]." <u>Id</u>. at 459. This market approach reflects the reality of the illicit drug marketplace. That is, drug traffickers trade not only

in "pure" drugs, but often mix drugs with cutting agents, carrier mediums, and other substances. Congress' "street effective" solution sets penalties according to specified minimum quantities of a "mixture or substance" that would be indicative of a major trafficker, including a manufacturer or retailer. Id. at 459-61.

Once a sentencing court is satisfied that material that must be separated prior to use is removed from the weight of a controlled substance, then the entire weight of the remaining drug is used to determine the base offense level. The law is clear. The Chapman Court held that a "mixture" for the purposes of 21 U.S.C. § 841(b) can be "two substances blended together so that the particles of one are diffused among the particles of another." Id. at 461. That Court went on to state that Congress "intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found-cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." Id. As noted in Chapman, the guidelines recognize that controlled substances are commonly mixed with some other substance that dilutes their purity. The guidelines require that "in the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the methamphetamine (actual) . . . whichever is greater." USSG § 2D1.1; Chapman, 500 U.S. at 461-62. This clearly includes cutting agents that are added to increase a drug's profitability for dealers and distributors – thereby enhancing its marketability. Defendant's argument, that ingestable cutting material added to a street-ready product should be extricated from the mixture prior to weighing for sentencing purposes, is erroneous. Based on the evidence, after application of Amendment 484 revisions, defendant is responsible for a 50.35 kilogram mixture containing a detectable quantity of methamphetamine.

In determination of the base offense level in § 2D1.1, the district court is to consider the weight of any mixture or substance containing a usable amount of controlled substance. In a case of a mixture or substance containing methamphetamine, the court is to use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the methamphetamine (actual), whichever is greater. USSG § 2D1.1(c), comment (n.1 and backg'd); see also United States v. Segura-Baltazar, 448 F.3d 1281 (11th Cir. 2006) (holding that drug amount for which defendant was responsible for sentencing purposes was net weight of mixture containing heroin and cutting agent); United States v.Gigley, 213 F.3d 509, 519 (10th Cir. 2000) ("the district court is to 'use the offense level determined by the entire weight of the mixture of substance, or the offense level determine by the weight of the . . . methamphetamine (actual), whichever is greater'") (quoting USSG § 2D1.1(c)). In comparison of defendant's calculated 1.44 kilograms of actual methamphetamine and 50.34 kilograms of a mixture containing methamphetamine, the mixture provides for the greatest offense level.[5] A mixture containing 50.34 kilograms of methamphetamine provides for a total offense level 38, the same level determined at the original sentencing. Application of Amendment 484 does not result in a reduction of defendant's guideline range. A reduction of a term of imprisonment is not authorized by § 3582(c) if the retroactive amendment does not have the effect of lowering a defendant's applicable guideline range. USSG §1B1.10(a)(2)(B). As the facts establish that defendant's sentence is not based on a

---

[5] Defendant's calculation that 1.44 kilograms of pure methamphetamine provides for a base offense level 32 is incorrect. This quantity of pure substance results in a base level of 36 (§ 2D1.1(c)(4)). Defendant also failed to include the 2-level increase for use of a dangerous weapon, resulting in a level 38. A 2-level reduction for acceptance, provides for a total offense level is 36, not 32. Total offense level 36 renders a sentencing range of 235 - 293 months.

sentencing range that has subsequently been lowered by the Sentencing Commission, this Court is without jurisdiction to consider a reduction of sentence under § 3582(c).  See United States v. Trujeque, 100 F.3d 869, 871 (10th Cir. 1996).

**IT IS THEREFORE ORDERED** that defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c) (Dkt. # 443), is **dismissed for lack of jurisdiction**.

**DATED** this 18th day of March, 2010.

                                                                     *Claire V Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT